[L. A. No. 9570. In Bank.—June 25, 1928.]

In the Matter of the Estate of ELLA McCRAY, Deceased. HAROLD A. McCRAY et al., Appellants, v. CITIZENS TRUST & SAVINGS BANK (a Corporation), Respondent.

T. Frank Courtney and D. Webster Egan for Appellants.

Henry Merton, O'Melveny, Tuller & Myers, and Walter K. Tuller for Respondent.

Pillsbury, Madison & Sutro, Brobeck, Phleger & Harrison and O'Melveny, Millikin & Tuller, *Amici Curiae*, for Respondent.

WASTE, C. J.—Ella McCray died on February 19, 1925, leaving an estate consisting of both real and personal property. A holographic will, executed by her and bearing date August 20, 1924, was admitted to probate upon the petition of the respondent Citizens Trust & Savings Bank, named therein as executor. By her will she bequeathed to her three sons and only heirs certain personal property, but did not devise to them, or otherwise attempt to dispose of the fee in her real estate, except that in the body of her will there appears the following provision: "The Real estate held in trust for 10 years at least and income equally divided among the sons." On the reverse side of the paper upon which the will is penned this language is used: "I want this real estate fixed so that the McCray Estate will be held in Trust for a time so that it cannot be squandered and wasted." The will contained no express appointment of a trustee. The "sons" referred to in the provision first above quoted were the then three living adult sons of the testatrix. One of them having passed away, his interest is represented in this proceeding by the administratrix of his estate. In due course, the probate court entered its decree of partial distribution, wherein appeared the following provision: "5. To Citizens Trust & Savings Bank, a Corporation, of Los Angeles, California, as Trustee, all the real property belonging to said estate, herein described, to be held in Trust for 10 years from August 20, 1924, and the income therefrom

to be equally divided annually hereafter share and share alike, ⅓ to Harold A. McCray, his heirs and assigns, ⅓ to Wilbur D. McCray, his heirs and assigns, and ⅓ between the heirs of Richard H. McCray, now deceased, their heirs and assigns until August 19, 1934, on which last date this Trust shall terminate, and the title in fee of all said real property shall thereupon vest: an undivided ⅓ in Harold A. McCray, his heirs and assigns forever, an undivided ⅓ in Wilbur D. McCray, his heirs and assigns forever, and an undivided ⅓ in the heirs of Richard H. McCray, now deceased, their heirs and assigns forever, free from the control of said trustee, or its successors.'' The surviving sons and the personal representative of the deceased son prosecute this appeal from the foregoing provision in the decree of distribution.

The decedent's attempted creation of a trust in her real property is first assailed by the appellants upon the ground that the will should have expressly provided for the appointment of a trustee, the vesting of an estate in such trustee, and the designation of a purpose for which a trust may legally be created. Failing to do so, the effect, they contend, is to render abortive the decedent's effort, resulting in the devolution of such property as in the case of intestacy. We are unable to agree with this contention. ■ It is the duty of the court to interpret the provisions of a will and to carry out the intention of the testatrix, if that intention can be ascertained, provided no law is violated in so doing. (*Estate of Reith*, 144 Cal. 314, 316 [77 Pac. 942] ; *Estate of Marti*, 132 Cal. 666, 668 [61 Pac. 964, 64 Pac. 1071].) ■ No technical language or set form of words is necessary to the creation of a trust, either by deed or will. The words ''upon trust'' or ''trustee'' are not indispensable if the intent to create a trust is otherwise sufficiently evident. (*Estate of Tessier*, 2 Cof. Prob. Dec. 362, 367; *Taber v. Bailey*, 22 Cal. App. 617, 620 [135 Pac. 975] ; *Estate of Doane*, 190 Cal. 412, 415 [213 Pac. 53].) It is sufficient if the subject matter of the trust, the purpose thereof, and the persons beneficially interested are indicated with reasonable certainty. (Sec. 2221, Civ. Code.) ■ In the instant case, the testatrix, by the employment of explicit language, clearly evidenced an intention to impose a

trust for a designated period upon her real property, during which period any income therefrom was to be paid over to her sons. That a trust may validly and legally be created for the purpose designated by her is recognized in subdivision 3 of section 857 of the Civil Code, and the will being in writing complies with the provisions of section 852 of the same code in that respect.

The testatrix did not fail in the accomplishment of her purpose because of the omission to expressly appoint a trustee. A trust will not be allowed to fail for want of a trustee, even though none be named. (*Hill* v. *Den,* 54 Cal. 6,· 20; *Cauhape* v. *Barnes,* 135 Cal. 107, 110 [67 Pac. 55].) When, by the terms of a will, a trust is imposed upon property for the purpose of paying over the income therefrom to designated beneficiaries, and no trustee is named in the will, the executor is the proper trustee to hold the property during the existence of the trust. (*Estate of Tessier, supra,* p. 367; 1 Perry on Trusts, 6th ed., sec. 262.) If the executor is not expressly appointed trustee, the court may determine from the whole will whether or not he is to act as trustee. Section 2289 of the Civil Code, following the rule in equity, provides that "When a trust exists without any appointed trustee . . . the superior court of the county where the trust property, or some portion thereof, is situated, must appoint another trustee, and direct the execution of the trust." Section 1702 of the Code of Civil Procedure is broad enough in its terms to confer that power upon the superior court sitting in probate, and in which the administration of an estate is pending. The respondent bank, named in the will as executor, was, therefore, properly appointed trustee by the court below. We find no merit in appellants' contention to the effect that there is in the will no direct devise of an estate to a trustee. In response to a similar contention, advanced in the *Estate of Reith, supra,* at page 320, this court held that "it is sufficient to say that when from the nature of the duties to be performed the taking of such estate is necessary, 'an estate in the trustees will vest by implication.'" (See, also, *Estate of Tessier, supra,* p. 368.) Neither is there any merit in the further contention of the appellants that the decree appealed from

declares a trust other than and different from that attempted to be set up by the testatrix in her will.

Finally, the appellants contend that the trust decreed by the probate court to have been created by the testatrix is void in that it suspends the absolute power of alienation for a fixed period of years, contrary to the limitations prescribed by the sections of the Civil Code relating to restraints upon alienations, when those sections are read in the light of section 9 of article XX of the state constitution. That section, taken verbatim from the constitution of 1849 (art. XI, sec. 16), declares that "No perpetuities shall be allowed except for eleemosynary purposes."

Section 715 of the Civil Code, as originally enacted in 1872, provides that the absolute power of alienation "cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition," except in the single case of contingent remainders in fee mentioned in section 772 of the same code—an exception which has no bearing on the instant case. It remained unchanged until 1917, when it was recast and a new subdivision added. (Stats. 1917, p. 699.) As so amended, the section now reads: "715. Except in the single case mentioned in section seven hundred seventy-two, the absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than as follows:

"1. During the continuance of the lives of persons in being at the creation of the limitation or condition; or

"2. For a period not to exceed twenty-five years from the time of the creation of the suspension."

By section 716 (enacted in 1872) every future interest is void in its creation "which, by any possibility, may suspend the absolute power of alienation for a longer period than prescribed" in the chapter of the code. It would seem that, by the subsequent addition of subdivision 2 to section 715 the legislature had made provision for the creation of such trusts as the one here attacked; but it is the contention of the appellants that this amendment, which permits of a flat period of twenty-five years, independent of lives in being, within which the absolute power of alienation may be suspended, is unconstitutional and void

as being in violation of the provisions of the constitution, *supra*. We are of the opinion that this contention has no merit for the reason that we find no room in this case for the application of the constitutional inhibition against perpetuities, *supra*, as rightly interpreted, nor for the application of the statutory provision against restraints on alienation; nor do we discover any discord between these two provisions of our law. The testatrix did not attempt to dispose of the fee in her real estate. The utmost which she did was to attempt to create a trust for the period of ten years through an unnamed trustee who was to have possession and control of her real estate, with no power of disposition, but with the duty of collecting and dividing the income thereof equally among her three sons and only heirs during that period. By so doing, she carved out of the fee to her real estate nothing more than an estate for years, that being all that was necessary for the purpose and full execution of the trust. (*Title Insurance & Trust Co.* v. *Duffill*, 191 Cal. 629, 648 [218 Pac. 14].) She therefore failed to dispose of other than this limited interest in her real property, and the fee therein became vested immediately upon her death in her three sons as her only heirs at law. In other words, they became vested with the title to the decedent's real property, subject only to the trust estate for ten years provided for in her will. This being so, and the entire real estate, including the trust estate for years created by her will, being thus vested immediately upon her decease, there was no estate remaining to which the rule against perpetuities could apply, for vested interests are never obnoxious to the rule. (Gray: The Rule against Perpetuities, (3d ed., sec. 99; see, also, *Blakeman* v. *Miller*, 136 Cal. 138 [89 Am. St. Rep. 120, 68 Pac. 587].) Assuming that the provision of the constitution which forbids, but does not define perpetuities has reference to the rule which had become crystallized under the English common law, that rule merely provides that "all future estates" which may "arise by way of executory devise, conditional limitation, or shifting and springing uses, must vest within a life or lives in being at the death of the testator, and twenty-one years; and in case the person in whom the estate or interest should then vest is *en ventre sa mere*, nine months more will be allowed; and all estates

created as aforesaid, and so limited that they may not vest within that time, are void." (1 Perry on Trusts, secs. 379, 380; *Goldtree* v. *Thompson,* 79 Cal. 613, 620 [22 Pac. 50].) The rule, "as applied to interests in land, may be stated as follows: Any limitation or provision, the purpose or possible effect of which is to cause an estate to commence in the future, is invalid if, as a result thereof, an estate may commence more than twenty-one years after a life or lives in being." (Tiffany on Real Property, 2d ed., sec. 179; see, also, *Estate of Hinckley,* 58 Cal. 457.) Decisions from other jurisdictions where a like rule obtains, in causes similar to that before us, illustrate the non-applicability of the rule against perpetuities to the situation presented in the instant case. (*Armstrong* v. *Barber,* 239 Ill. 389 [88 N. E. 246]; *Mettler* v. *Warner,* 243 Ill. 600 [134 Am. St. Rep. 388, 90 N. E. 1099]; *Belfield* v. *Booth,* 63 Conn. 299 [27 Atl. 585]; *Cowherd* v. *Fleming,* 84 W. Va. 227 [100 S. E. 84]; *In re Rhodes' Estate,* 147 Pa. St. 227 [23 Atl. 553].) The substance of these cases is set forth in the statement of the principle in Gray's Rule against Perpetuities, *supra,* section 186 et seq.

The appellants, however, contend that the statutory rules against restraints on alienation, *supra,* have application to the instant case for the reasons set forth in *Estate of Walkerly,* 108 Cal. 627 [49 Am. St. Rep. 97, 41 Pac. 772], upon which they strongly rely. The rule against restraints on alienation has been, in some cases, confused with the rule against perpetuities; but the two rules, while having the same end in view, viz., that of preventing undue interference with the freedom of transfer of property, are of entirely different origin and application. The rule against perpetuities, engrafted upon our system by the constitution, relates only to future interests in property, the vesting of which is to be postponed beyond the allotted time. The rule relating to restraints on alienation, on the other hand, is statutory in origin, and has reference to an undue prevention of the transfer of estates already vested. This distinction was clearly pointed out in *Strong* v. *Shatto,* 45 Cal. App. 29 [187 Pac. 159], and in *Estate of Cavarly,* 119 Cal. 406 [51 Pac. 629]. In the latter case this court said (p. 409): "Our statute is not, properly speaking, against perpetuities. It simply prohibits re-

straints upon alienation." The *Estate of Walkerly, supra,* was a case arising under the provisions of section 715 of the Civil Code, *supra,* as it read prior to its amendment in 1917, and which, at the time the facts in the case arose, forbade restraints on alienation beyond a life or lives in being. It is clear that the amendment to the section (par. 2, *supra*), which permits of. alienation "for a period not exceeding twenty-five years from the time of the creation of the suspension," if valid, takes this case entirely out of the operation of the section, since, even if it should be assumed that there is any suspension of alienation in the instant case, it could at most be only for the period of ten years.

The appellants undertake to argue that the amendment to the section is unconstitutional as in violation of the constitutional rule against perpetuities, but in so doing they fall with the confusion of terms to which we have referred, and we find no merit in their contention. The *Estate of Walkerly, supra,* while doubtless sound law as applicable to the facts of that case and to the state of the law as it then existed, has no application to either the facts in the present case or the law as it now exists.

For the foregoing reasons, the probate court was correct in recognizing and upholding the trust created by the will of the testatrix and, in the exercise of its power, in the appointment of a trustee in order to carry into effect the terms of the trust; but it was in error in providing in its decree that title in fee to the real property should not vest in those entitled thereto, their heirs and assigns, until August 19, 1934, on which last named date, the decree further provided, the trust should terminate and the title in fee of all of the real property should thereupon vest. It should have distributed the real property of the testatrix to her heirs at law, or their heirs or assigns, subject to the terms of the trust estate.

In so far as the court was in error in respect to the above noted portions of its decree, the judgment is reversed, with instructions to the court below to make and enter its decree of distribution of the fee of the real estate to the heirs at law of the testatrix, their heirs or assigns, in accordance with the laws of succession and sub-

ject to the terms of the aforesaid trust estate. In all other respects, the judgment is affirmed.

Richards, J., Shenk, J., Curtis, J., Preston, J., Seawell, J., and Tyler, J., *pro tem.*, concurred.