Erwin P. WERNER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14410.

United States Court of Appeals
Ninth Circuit.

March 31, 1956.

acres adjacent to March Field, Riverside County, California to the government for military purposes. The agreed rental was $25 (sixty-two and one-half cents per acre) per year. The initial term of the lease was for the five month period ending June 30, 1943. However, the lease contained the following clause:

"This lease may, at the option of the Government, be renewed from year to year at a rental of $25.00 per year, and otherwise upon the terms and conditions herein specified, provided notice be given in writing to the Lessor at least 30 days before this lease or any renewal thereof would otherwise expire: Provided that no renewal thereof shall extend the period of occupancy of the premises beyond six months from date of the termination of the unlimited National Emergency, as declared by the President of the United States on May 27, 1941." (Proclamation 2487 [50 U.S.C.A.Appendix, note preceding section 1])

After the execution of the lease a modification was made with respect to "notice of renewal." (The modification is not material here.) At the time the complaint was filed herein on August 28, 1951, the government had remained constantly in possession since 1943, paying or tendering payment each year of the sum of $25.

By November, 1949, Werner had become dissatisfied and began his first attempt to "break out" of the lease. That was a suit to reform the lease to provide that it should terminate "six months from the date of cessation of the hostilities of the Axis Nations then at war or the surrender of the Axis Nations" rather than at the termination of the national emergency. A plea of the statute of limitations was dispositive of the case without the consideration of substantive questions, Werner v. United States, 9 Cir., 188 F.2d 266.

The second action filed as aforesaid on August 28, 1951, asserted and plaintiff-appellant Werner proposed to prove as a matter of fact that "the unlimited

Morris Lavine, Los Angeles, Cal., for appellant.

Perry W. Morton, Asst. Atty. Gen., Harold S. Harrison, John F. Cotter, Fred W. Smith, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Joseph F. McPherson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Plaintiff-appellant's predecessors in the title on February 1, 1943, leased 40

national emergency, as declared by the President of the United States on May 27, 1941," had expired prior to commencement of this second action. He prayed for the reasonable rental value after the termination of the "national emergency."

In the district court the government obtained a dismissal upon a plea that the judgment was res judicata. A second appeal followed. This court thereupon held that the new issues of the second complaint were not res judicata under the first action and further held that plaintiff was entitled to a trial and entitled to prove, if he could, that the national emergency, as declared on May 28, 1941, had terminated prior to commencement of the second action. Werner v. United States of America, 9 Cir., 198 F.2d 882.

When the case was returned to the district court, the government answered that the national emergency terminated on April 28, 1952, by Proclamation 2974, 17 F.R. 3813, 50 U.S.C.A.Appendix, note preceding section 1. If that be true, then the lease would have expired October 28, 1952, i. e. six months after the proclamation.

At trial, plaintiff's sole contention was that the national emergency expired with the approval by the President on July 25, 1947, of S.J.Resolution No. 123, Public Law 239 of the 80th Congress, 61 Stat. 449. Section 3 of the resolution read as follows:

"In the interpretation of the following statutory provisions, the date when this joint resolution becomes effective shall be deemed to be the date of the termination of any state of war heretofore declared by the Congress and of the national emergencies proclaimed by the President on September 8, 1939, and on May 27, 1941." See 50 U.S.C.A. § 171 note.

And one of the statutes listed thereunder was the "Act of July 2, 1917, 40 Stat. 241, as amended." See 50 U.S.C.A. § 171.

Necessarily that involves an examination of 50 U.S.C.A. § 171. It reads as follows:

"The Secretary of the Army may cause proceedings to be instituted in the name of the United States, in any court having jurisdiction of such proceedings for the acquirement by condemnation of any land, temporary use thereof or other interest therein, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications, coast defenses, military training camps, and for the construction and operation of plants for the production of nitrate and other compounds and the manufacture of explosives and other munitions of war and for the development and transmission of power for the operations of such plants; such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted: *Provided*, That when the owner of such land, interest, or rights pertaining thereto shall fix a price for the same, which in the opinion of the Secretary of the Army shall be reasonable, he may purchase or enter into a contract for the use of the same at such price without further delay: *Provided further*, That the Secretary of the Army is authorized to accept on behalf of the United States donations of land and the interest and rights pertaining thereto required for the above-mentioned purposes: *And provided further,* That when such property is acquired in time of war, or the imminence thereof, upon the filing of the petition for the condemnation of any land, temporary use thereof or other interest therein or right pertaining thereto to be acquired for any of the purposes aforesaid, immediate possession thereof may be taken to the extent of the interest to be acquired and the lands may be occupied and used for military purposes."

At trial the district judge held Werner's lease was not affected by S.J.Resolution 123 of July 25, 1947. This appeal followed.

■ This court holds the trial court was correct and bottoms its decision on two grounds. First, this court is not satisfied that plaintiff's lease was acquired solely under 50 U.S.C.A. § 171, or at all. The government acquired property for war uses under many statutory authorizations. To list them all would be exhaustive.

Second, as this court construes the effect of Resolution 123 on 50 U.S.C.A. § 171, it could have only a prospective effect: the government could make no more purchases and initiate no new leases. The section is one for acquisition. Termination of the right to make new acquisitions does not lead to the non sequitur that rights under existing leases were thereby lost.

■ In the foregoing views, one does not reach the question of legislative authority to declare the emergency at an end for such a purpose as terminating plaintiff's lease.[1] The trial court thought only the executive could ascertain the fact of the termination of the emergency and declare it so. Perhaps this is right. But it need not be considered here.[2]

Sua sponte, this court raised at oral argument a question of whether the lease violated California land law, i. e. the rule against perpetuities. In the present world instability it is of course not facetious to think of a national emergency lasting beyond the traditional "lives in being and 21 years thereafter," and so one may think of the rule against perpetuities.

The matter having been so raised the parties were requested to file briefs.

■ One of the most succinct statements in reported cases in California on the nature of the rules in the state is to be found in the In re Estate of Sahlender, 89 Cal.App.2d 329, 201 P.2d 69, 79, where it is said:

"* * * in this state we have both the rule against restraints on alienation, with its statutory period of lives in being or twenty-five years, and the rule against remoteness of vesting, with its common-law period of lives in being and twenty-one years."

The statement is simple but in the application of the rules the courts have had many difficulties. See "Perpetuities and Restraints; a Needed Reform, by Henry Coil," 30 California Bar Journal 83.

■■ It would seem that there is no problem of remoteness of vesting here under California law. As to a restraint on alienation, California squarely holds that there is no violation of the rule if at all times there are in existence parties who could join together and convey complete title. This the government and Werner (or his predecessors) could have

1. At first blush, one does find difficulty in justifying a proposition that "the emergency was over" for purposes of acquiring more leases, but "the emergency was not over" for the purpose of ending a lease which was to end with the emergency. But the fundamental doctrine of separation of powers of government requires that the executive branch makes the leases after being authorized by the legislative branch to do so. Similarly, it is an executive matter to administer and terminate leases. A court should avoid a construction, if possible, that the legislative branch was usurping the executive's function.

2. The second Werner case, 9 Cir., 198 F. 2d 882, went back to the district court to allow Werner to prove as a matter of fact that the emergency had terminated at a date between May 1948 and December 1950. No such proof was offered.

While the tendency is to leave the determination of the end of emergency to the executive branch, it is conceivable that international affairs could again achieve such placidity that a court could venture to take judicial notice that an emergency had ended, absent any such determination by the executive. See Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865; Pouquette v. O'Brien, 55 Ariz. 248, 100 P.2d 979.

A parallel would be that the fact being indisputable, the Congress could proceed upon the same presumption. Further, it should be kept in mind that in the complexities of "terminating" wars today, there necessarily will be questions of constructions as to what action the executive has really taken.

done at all times. The cases of In re Estate of Sahlender, supra; In re Mc-Cray's Estate, 204 Cal. 339, 268 P. 647, and Blakeman v. Miller, 136 Cal. 138, 68 P. 587 appear to dispose of the questions. Indeed, a close examination of In re Walkerley's Estate, 108 Cal. 627, 41 P. 772, the only case cited by Werner, indicates it is no more favorable to plaintiff than the other cases.

If our analysis of California's land law be not correct, it is enough to say that plaintiff Werner was given an opportunity to prove that the emergency had in fact ended. He did not bear the burden of proof.

Also, the government is probably correct that here we should not notice the point of perpetuities, it not having been raised below or made the subject herein of any specification of error. In this court's view, when the case went back to the trial court for the second time, the only question open for consideration was whether the emergency had in fact ended —unless, perhaps some illegality shocking to the conscience of the court became apparent.

There is the possibility of great inequity when the government attempts to condemn a leasehold on the terms of Werner's lease. The government, for a nominal consideration, takes the property on a basis of practically neutralizing its value. The fee may become virtually unmarketable. See United States v. Baumann, D.C., 56 F.Supp. 109.

What the government was trying to do in Baumann would seem to justify some kind of judicial interference by a trial court in the posture of the case under Oregon condemnation law.

But here, as this case comes to this court, Werner's predecessors apparently voluntarily entered into the lease. If it should violate the rule against perpetuities in California, the point having not been noticed below or even herein, it is probably not the sort of agreement so shocking to the conscience of a court that an appellate court, sua sponte, should strike it down. Cf. Oscanyan v. Arms Co., 103 U.S. 261, 26 L.Ed. 539.

The judgment is affirmed.

STEPHENS, Circuit Judge (concurring).

I concur, but because I think the issue of the rule against perpetuities was fortuitously and inadvisedly brought into the case, I express no opinion on that subject.

JAMES ALGER FEE, Circuit Judge, concurring in result.

Whatever the rights of plaintiff, he did not take prompt and effective measures to bring an end to the term of the United States created by the execution of the original lease. The two previous cases in this Court make this clear. Upon the last remand, there was a direction to try a single question of fact. But that was not tried.

In view of the fact that none of the questions considered was properly before the trial court or, in my opinion, before us, I am constrained to concur in the result only.